### UNITED FIREMEN'S INS. CO. OF PHILADELPHIA v. JOSE RIVERA SOLER & CO., Inc.

No. 2999.

Circuit Court of Appeals, First Circuit.

Jan. 7, 1936.

MORTON, Circuit Judge, dissenting.

———◆———

Carroll G. Walter, of New York City (Henri Brown, of San Juan, P. R., on the brief), for appellant.

Martin Travieso, of San Juan, P. R., for appellee.

Before BINGHAM and MORTON, Circuit Judges, and MORRIS, District Judge.

BINGHAM, Circuit Judge.

Since handing down our opinion in this case on May 25, 1935, the defendant has filed a motion for rehearing, a rehearing has been granted as to the tenth assignment of error and the assignments relating to the refusal of the court below to direct a verdict for the defendant, and the parties have been heard.

Under the tenth assignment it is contended that the verdict and judgment are contrary to law; that the amount of the loss fixed by the verdict is so inconsistent with the proof of loss and the provisions of the policy, both of which are made a part of the pleadings, as to show that the plaintiff's sworn proof of loss was fraudulent as a matter of law.

■ When the case was previously before us, we declined to consider this question, apparently on the ground that, aft-er the verdict, no motion, ruling, or exception relating to the matter was had or taken at the trial term. On reconsideration of the question, we are of the opinion that no motion or exception was necessary, that the error, if any, appeared upon the face of the record proper, and that a writ of error and an assignment of error relating to the matter are all that are required to preserve the question and authorize us to entertain it. Bills of exception are necessary to preserve exceptions to rulings made in the progress of the trial, but errors appearing on the face of the record proper need not be so preserved. In the court below the defendant could have made a motion in arrest of judgment, but no such motion was necessary.

This question was before the court in Slacum v. Pomery, 6 Cranch, 221, 223, 3 L.Ed. 205, where defendant contended that, although such a question "might have been taken advantage of in the court below, in arrest of judgment, yet it was also a fatal objection upon a writ of error," for "the record [record proper] does not show that the plaintiff was entitled to his judgment." Counsel for the plaintiff, however, contended that a motion in arrest of judgment was necessary. But Chief Justice Marshall, in speaking for the court, said:

"There can be no doubt that any thing appearing upon the record, which would have been fatal upon a motion in arrest of judgment is equally fatal upon a writ of error."

The order in that case reversed the judgment and remanded the cause "with direction that the judgment be arrested" —that is, that no judgment be entered on the verdict.

■ In considering the question raised by the tenth assignment, the evidence introduced at the trial and brought here by bill of exceptions is not to be considered, for that is no part of the record proper. The inquiry is confined to such matters as appear in the record proper. That record in this case includes the complaint, proof of loss and the policy (which are included in the complaint), the verdict, and judgment.

In the complaint it is alleged that, on the 9th day of February, 1932, the defendant issued to the plaintiff a policy of fire insurance, insuring its goods and property, for one year from the date

of the policy, against loss or damage caused by fire in the sum of $30,000; that "the description of the property insured, the location thereof and the amounts covered by the said policy of insurance" were as follows:

"'Thirty thousand dollars': For the term of one year, distributed as follows:

$15,000.00: On stock of merchandise, unembroidered, embroidered, and in the process of being embroidered, or for repairs, and *on cost of labor performed thereon* [italics supplied], including all materials, ingredients and supplies used in the manufacturing and repairing the same, including boxes, samples and packages, the property of the assured, or held in trust or on commission, or consignment, or on joint account with others, or held on storage for which the assured may be legally liable, or sold but not delivered all while contained in the two story concrete building with zinc roof, situated at Pumerada St. No. 4, block No. 657 of the suburb of Santurce, San Juan, Puerto Rico.

$12,000.00: On machinery of every description, motors, electrical installations, including cost of installation of machinery, motors, boilers, stoves, implements, parts, spare parts, instruments, and any other material used for repairs and/or conservation of the machinery for the manufacture of embroidered goods in the premises described above.

$ 3,000.00: On furniture, fixtures including tables, shelves, stands, office furniture and fixtures, printed supplies, labels, additions and repairs made in the premises above mentioned.

$30,000.00: Total."

The tenth condition of the policy provided that "on the happening of any loss or damage the Insured shall forthwith give notice thereof to the Company, and shall within fifteen days after the loss or damage, or such further time as the company may in writing allow in that behalf, deliver to the company *a claim in writing* for the loss and damage, etc." And in condition 12 it provided:

"*If the claim be in any respect fraudulent,* or if *any false declaration be made* or *used in support thereof,* or if any fraudulent means or devices are used by the Insured or anyone acting on his behalf to obtain any benefit under this policy; or, if the loss or damage be occasioned by the wilful act, or with the connivance of the Insured; or, if the claim be made and rejected and an action or suit be not commenced within three months after such rejection, or (in case of an arbitration taking place in pursuance of the 17th Condition of this policy) within three months after the Arbitrator or Arbitrators or Umpire shall have made their award, *all benefit under this policy shall be forfeited.*" (Italics supplied.)

Under the first item of the policy covering the property there specified in the sum of $15,000 the plaintiff claimed in its proof of loss the destruction of property valued at $17,345.21; under the second item of the policy covering the property there specified in the sum of $12,000, it claimed in its proof of loss the destruction of property valued at $14,835.10; and, under the third item insuring property for $3,000, it claimed in its proof of loss $3,745.75—making a total valuation of property claimed to have been destroyed of $35,926.06, the total insurance being $30,000.

The verdict of the jury was for $17,000, and the judgment entered was for that amount. It thus appears in the record proper that the total amount of insurance on the property was $30,000, that the total value of the property insured, as claimed and sworn to in the proof of loss, was $35,926.06, and that the verdict and judgment were for $17,000, or something less than half the total value of the property sworn to in the proof of loss upon which the plaintiff sought to have the company pay it $30,000.

■ The defendant contends that the great disparity between what the jury awarded ($17,000) and what the plaintiff would have been entitled to ($30,000) had it had property on hand at the time of the fire of the value of $35,926.06, as claimed and sworn to in the proof of loss, necessarily shows that the proof of loss contained fraudulent statements as to the value and character of the property on hand and insured.

It is perfectly plain that the verdict of the jury is entirely inconsistent with the allegations of the complaint and the proof of loss, and we think this disparity of nearly $19,000 shows on its face and as a matter of law that the sworn proof of loss was fraudulent and, if so, then under the twelfth condition of the policy, all benefit thereunder was forfeited. The verdict should have been either for nothing or in the neighborhood of $30,000.

■■ A similar question arises under the motion for a directed verdict based upon the evidence as to the cost of labor. The cost of labor was one of the elements insured under the policy. It was

**388**

set down in the proof of loss as $2,524.50.

Under the motion for a directed verdict the evidence introduced at the trial and included in the bill of exceptions is open for consideration. There is no evidence in the case, and counsel for the plaintiff has pointed out none, though requested to do so, showing that the cost of labor "on goods in process" was $2,524.50, as stated in the sworn proof of loss. The only evidence in the record relating to that subject is that given by Soler himself (president of the plaintiff company), where he states that the sum of $2,524.50 was the contract price which the company was to receive for manufacturing the goods of others. If the statement in the proof of loss, to which Soler made oath, did not represent the cost of labor, but was the contract price which the plaintiff was to receive from others for whom goods were being manufactured, no other conclusion can reasonably be drawn than that the statement in the proof of loss was knowingly made for the purpose of getting money from the insurance company that the plaintiff was not entitled to and was fraudulent, and, under condition 12 of the policy, deprived the plaintiff of its benefits. Soler was the president of the plaintiff company and made oath to the proof of loss.

We had a similar question before us in Cuetara Hermanos v. Royal Exchange Assurance Co., 23 F.(2d) 270, certiorari denied 277 U.S. 590, 48 S.Ct. 437, 72 L.Ed. 1002. Article 13 of the policy in that case read the same as condition 12 of this one. There the value of the property destroyed was largely overstated in the proof of loss, and we sustained a directed verdict for the defendant on the ground that the claim made either in the proof of loss or in evidence at the trial was false and so excessive from the standpoint of the value and amount of property actually destroyed that the District Court did not err in directing a verdict for the defendant.

· Our order of May 25, 1935, affirming the judgment of the District Court of Puerto Rico, is vacated, the judgment of the District Court of Puerto Rico of May 31, 1934, is vacated, and the case is remanded to that court, with directions to enter an order in arrest of judgment, with costs to the appellant in both courts.

MORTON, Circuit Judge (dissenting).

My brethren hold, first, that fraud on the part of the plaintiff conclusively appears *on the face of the record without considering any evidence;* and, second, that fraud on the part of the plaintiff with respect to a certain item in the proof of loss was so conclusively established by the evidence that the defendant was entitled to a directed verdict. On neither point am I able to agree.

As to the first point, passing by immaterial matters, the record before us consists of the complaint with the papers annexed to it; i. e., the policy and the proofs of loss, the answer which sets up many defenses including fraud, and the verdict which was for just about one-half the amount claimed in the proofs of loss. Looking at these papers and nothing else, my brethren hold that fraud on the part of the plaintiff is conclusively established by the discrepancy between the amount of the claim and the amount of the verdict. In the opinion they say, "The evidence introduced at the trial and brought here by bill of exception is not to be considered, for that is no part of the record paper." No precedent for the decision is referred to, and none has come to my attention.

Fraud as used in this policy means conscious dishonesty. It is a matter of fact. The majority opinion holds, in effect, that, when the amount claimed in a proof of loss under a fire insurance policy is cut down one-half by the jury on the trial of the case, fraud is thereby conclusively established, and the proofs cannot under any circumstances have been honestly made. It seems to me, on the contrary, very easy to conceive circumstances under which the amount honestly claimed in a proof of loss might be cut down one-half by a jury. On questions of valuation and sometimes also on questions of ownership for insurance purposes, there is wide room for honest mistakes and honest difference of opinion. If we assume, as I think we must, that the jury were properly instructed[7] that fraudulent statements by the plaintiff in the proof of loss would entitle the defendant to a verdict, then the verdict for the plaintiff necessarily involved a finding on the evidence presented that the proofs of loss were not fraudulent. This finding is set aside without considering the evidence.

If the verdict for the plaintiff be regarded as inconsistent with the finding on damages, that point should, I think, have been brought to the attention of the trial judge on a motion to set the verdict aside, which was not done. It cannot be presented indirectly in this way. How can we say that the error in the verdict, if there was one, did not consist in awarding inadequate damages on an honest claim, rather than awarding any damages on a dishonest one? Such questions necessarily involve an examination of the evidence. Again the instructions to the jury as to the law under which damages should be assessed, which are not before us, may have been very different from what the plaintiff had in good faith supposed the law to be. Such a mistake is not fraud. For these reasons and others which might be mentioned I do not think that the discrepancy between the claim and the verdict conclusively proved that the claim was fraudulent.

As to the second point, viz. the item of $2,524.50 for "goods in process": The evidence on this is before us and my brethren hold that fraud by the plaintiff with respect to it was established as a matter of law, so that the defendant was entitled to a directed verdict. The opinion states, "The only evidence in the record relating to that subject (the item in question) is that given by Soler himself," etc. This would seem to be a clear mistake. The plaintiff's expert accountant (Gorbea) refers explicitly to this item as being in the plaintiff's books, "According to what the books show the plaintiff has * * *" (various items) "* * * goods in process $2,524." After discussing other matters, he continued, "Now goods in process $2,534. Here is a voucher which is—" Objection was made by the defendant to the introduction of the vouchers. The witness (Gorbea) continued, "I did find an entry in the inventory book corresponding to that voucher," etc. During a rather lengthy discussion, plaintiff's counsel said there were "hundreds, perhaps thousands, (of vouchers) which would encumber the record unnecessarily." Eventually the vouchers were not admitted. The same witness testified that the plaintiff's books and vouchers to which he had referred "are a complete record of the business transacted by that company (the plaintiff)." The $2,524.50 item was repeatedly referred to and discussed. Soler's testimony about this item was in part as follows:

"As to the item of $2,524.50 for labor and goods in process I would have to get the assistance of my bookkeeper; I really never participated in the work of the accounting department; if he explains to me; * * * labor and goods in process means work that is not finished; unfinished work; sometimes one goes to the machine department and finds a piece that is finished, but still has to be embroidered, but others that are embroidered but not sewn together yet. We did work for firms outside of Puerto Rico; the American houses supplied us with the material and we supplied the labor and thread for sewing and embroidering; we got the material from the United States and the company supplied the labor and thread and other necessaries to complete the work; then I made out my invoice and took it to the bank, and they gave me credit for it and discounted it. * * *

"The item that I have included in my claim for labor on merchandise in stock refers exclusively to the articles that I was manufacturing for these New York houses; I don't know if in that item there is included also the thread; no, in that item there is included only the price that we collected from the people in New York; that is to say, if my contract price was 75 cents a dozen for creepers, a certain class of creepers, and I had ten dozen of those on hand, that $7.50 was insured."

This shows the charges which went into the item. They are of a kind as to which honest mistake is easily conceivable. I suppose that the last statement above quoted is the one on which my brethren rely as conclusively establishing fraud on Soler's part, in the face of the jury's finding to the contrary. There is no evidence that Soler was making any profit on this work, or did not take it at cost. That possibility ought to be eliminated before it is held that his statement above quoted affords conclusive evidence of fraud by him. His testimony by no means shows, as it appears to me, that he may not have acted under honest mistake as to his rights. Apparently, this item was fully supported by the vouchers which were not put in. Conclusive fraud with respect to it does not seem to me to have been shown.